13 P.3d 451 (2000)
Allen KOERSCHNER, Appellant,
v.
The STATE of Nevada, Respondent.
No. 30881, 30976.
Supreme Court of Nevada.
December 4, 2000.
*453 Christopher R. Oram, Las Vegas, for Appellant.
Frankie Sue Del Papa, Attorney General, Carson City; Stewart L. Bell, District Attorney, James Tufteland, Chief Deputy District Attorney, and Douglas W. Herndon, Deputy District Attorney, Clark County, for Respondent.
BEFORE THE COURT EN BANC.

OPINION
MAUPIN, J.:
A jury found appellant Allen Koerschner guilty of two counts of sexual assault upon the person of a minor. Koerschner seeks reversal of the judgment of conviction entered upon the jury verdicts because the district court erroneously denied Koerschner's request for an independent psychological examination of the child-victim, found the child-victim competent to testify, admitted evidence of prior consistent statements of the child made to medical providers in connection with one of the alleged assaults, allowed the case to proceed to trial on charges that were not sufficiently pleaded, refused to admit evidence of instances of dishonesty of the child-victim on the issue of motive, and refused to admit evidence of prior sexual abuse of the child-victim by a third party.

FACTS
Allen Koerschner and his spouse took custody of their nine-year-old niece following the death of her mother. On May 2, 1992, the niece was admitted to a Las Vegas hospital with severe bleeding from the area of her cervix. She initially advised hospital personnel that the bleeding was caused by a fall down a flight of stairs.
Gema Reynolds, a nurse trained in sexual assault cases, was the first person to examine the child. No bruises, scratches, abrasions, or lacerations were identified. Concluding that the injury was not consistent with a fall, Nurse Reynolds undertook further questioning. The child then described a sexual assault, which she claimed was perpetrated by Koerschner.
Subsequent examination by Dr. Donald Roberts revealed the absence of a hymenal ring and a four centimeter laceration of the victim's vaginal wall. Dr. Roberts noted that the lack of a hymenal ring and the necessity of using an adult-sized speculum to conduct the examination were unusual for a nine-year-old female. He then concluded that the injury was not caused by a fall.
On March 18, 1996, the State filed a second amended information charging Koerschner with three counts of sexual assault upon the person of a minor under the age of fourteen years.[1] The three counts referred to separate incidents that took place during 1990, 1991 and 1992. Specific dates for the 1990 and 1991 incidents were not alleged.
At trial, the child described acts of sexual intercourse commencing in September of 1990, shortly after she moved into the Koerschner home, and further acts that occurred over time during 1991 and 1992. She testified that on May 2, 1992, Koerschner told her to enter his bedroom, remove her clothes and lie down on the bed. She then described a painful act of intercourse that resulted in severe bleeding. Ultimately, when the bleeding continued, Koerschner sought medical treatment for her. According to the child, while en route to the hospital, Koerschner told her to tell the hospital staff that she had fallen down the stairs.
*454 A jury ultimately found Koerschner guilty of two counts of sexual assault upon the person of a minor under the age of fourteen years. The district court sentenced Koerschner to consecutive terms of life in the Nevada State Prison with the possibility of parole after service of ten years on each count. Koerschner appeals.

DISCUSSION

Independent psychological examination of the victim
Koerschner contends the district court erred in denying his application for a psychological examination of the victim. This issue requires us to revisit and reconcile our prior authority on this subject. See Marvelle v. State, 114 Nev. 921, 966 P.2d 151 (1998); Griego v. State, 111 Nev. 444, 893 P.2d 995 (1995); Keeney v. State, 109 Nev. 220, 850 P.2d 311 (1993); Lickey v. State, 108 Nev. 191, 827 P.2d 824 (1992); Washington v. State, 96 Nev. 305, 608 P.2d 1101 (1980).
In Marvelle, Griego, Keeney, Lickey and Washington, this court considered the extent of discretion held by district courts of this state to grant or deny independent psychological or psychiatric evaluations of child-victims in sexual assault cases, where independent corroboration of the alleged offense is either marginal or is lacking altogether.
In Washington, we stated that trial courts should order a psychiatric examination of a child-victim if the defendant presents a compelling reason for such an examination. Under Washington, no compelling reason exists "unless there is little or no corroboration of the victim's allegations and the defense has questioned the effect of the victim's emotional or mental condition upon her veracity." Washington, 96 Nev. at 307, 608 P.2d at 1102.[2]
This court held in Lickey that, unless competent evidence presents a compelling reason to protect the victim, a defendant in a child sexual assault case is entitled to have the victim undergo an independent examination when the State is provided such assistance. In Lickey, the prosecution's evidence consisted almost entirely of the child-victim's testimony, and the victim had been interviewed numerous times by the State's experts. Lickey, 108 Nev. at 194, 827 P.2d at 826.
In Keeney, we reaffirmed the proposition that a decision to grant a psychological examination of a victim is within the sound discretion of the district court and will not be set aside absent an abuse of discretion. Keeney, 109 Nev. at 227, 850 P.2d at 316. Under Keeney, whether an abuse of that discretion has occurred is tested in connection with four factors:
[I]t would be error to preclude a defendant from having an alleged child-victim examined by an expert in psychiatry or psychology if: (1) the State has employed such an expert; (2) the victim is not shown by compelling reasons to be in need of protection; (3) evidence of the crime has little or no corroboration beyond the testimony of the victim; and (4) there is a reasonable basis for believing that the victim's mental or emotional state may have affected his or her veracity.
Id. at 226, 850 P.2d at 315. The articulation of the second factor in Keeney arguably shifted the burden in these matters from the defendant to the State. Certainly, in Washington, this court stated the test in terms of whether the defendant has presented a compelling need for such an examination. Under Keeney, the second factor seems to place the onus on the State to show a compelling need for protection of the victim if the other factors are present.
In Griego, we held that, "absent an affirmative, compelling showing by the State that the alleged victim is in need of protection, the second Keeney factor favors examination of the alleged victim by a mental health expert employed by the defendant." Griego v. State, 111 Nev. 444, 450, 893 P.2d 995, 999 (1995). This statement underscores the argument that Keeney shifted the burden from the defendant to the State in such cases.
*455 In Marvelle, the State, although representing that it was not going to call any psychological experts, elicited some evidence from witnesses, mainly counselors who were not qualified to testify as experts, regarding the consistency of the child-victim's behavior. The majority in Marvelle concluded that the psychological status of the victim was at issue and that there was very little reason to afford protection from such an examination. The majority also, at least arguably, implied that district courts must give equal weight to all four Keeney factors when it held that two of the factors were erroneously applied whether an expert would be called to testify by the State and whether the victim's mental or emotional state may have affected her veracity. Marvelle v. State, 114 Nev. 921, 928, 966 P.2d 151, 155 (1998). The dissent in Marvelle criticized the majority, indicating that district courts must weigh the factors based upon the facts and circumstances surrounding each case. The dissent went on to observe that, while all of the Keeney factors should be considered, the district courts should have the discretion of giving more weight to any one of them. Id. 114 Nev. at 933, 966 P.2d at 158 (Shearing, J., dissenting).
The primary source of ambiguity in our decisions in these cases centers on the second Keeney factor, i.e., whether the victim is not shown by compelling reasons to be in need of protection. See Griego, 111 Nev. at 450, 893 P.2d at 999. We now conclude that, to the extent Keeney shifted the burden in these matters from the defendant to the State, it should be overturned. In this, we return to the statement in Washington that "[t]he trial judge should order an examination if the defendant presents a compelling reason for such an examination." Washington v. State, 96 Nev. 305, 307, 608 P.2d 1101, 1102 (1980). We now also hold that whether a compelling need exists for such an intrusion is not a factor to be considered along with the other three factors. Rather, it is the overriding judicial question which must be resolved based upon the other three factors.[3] Thus, compelling reasons to be weighed, not necessarily to be given equal weight, involve whether the State actually calls or obtains some benefit from an expert in psychology or psychiatry, whether the evidence of the offense is supported by little or no corroboration beyond the testimony of the victim, and whether there is a reasonable basis for believing that the victim's mental or emotional state may have affected his or her veracity.[4]
Applying these considerations to the facts of this case, we conclude that Koerschner failed to prove a compelling need for the examination he seeks. Most importantly, the State presented ample corroboration of the victim's testimony to support the charges against Koerschner, namely, a four centimeter internal laceration and the need to use an adult procedure to examine the victim. Additionally, Dr. Roberts and Nurse Reynolds both testified that this type of injury was indicative of a sexual assault and atypical of a fall down a flight of stairs. Next, the State elicited no psychological evidence during its presentation to the jury, nor is there any indication that the State had some advantage over the defense by having access to psychological evidence. See Lickey v. State, 108 Nev. 191, 193, 827 P.2d 824, 825 (1992) (involving a prosecution where the State called an expert to testify that the victim had experienced *456 "Post Traumatic Stress Disorder-Secondary to Child Sexual Abuse"). Finally, while the child-victim in this case had experienced a very tragic and stressful childhood, there was no indication in the record that her veracity was affected to any particular degree by her mental or emotional state.

Competency of the child-victim
Koerschner contends that the child-victim was not competent to testify because her testimony was the product of "coaching" and rehearsal of her testimony. We conclude that this contention lacks merit.
A child witness is competent to testify if the child has the capacity to receive just impressions and possesses the ability to relate to them truthfully. See Felix v. State, 109 Nev. 151, 173, 849 P.2d 220, 235 (1993). This court "will not disturb a finding of competency [to testify] absent a clear abuse of discretion." Lanoue v. State, 99 Nev. 305, 307, 661 P.2d 874, 874 (1983). The child-victim in this case was fourteen years of age at the time of trial, she clearly had the ability to receive and communicate information, had a memory of the events upon which the proceedings were based, and understood the need to testify truthfully. Accordingly, we conclude that the district court acted within its discretion in allowing the victim to testify.

Hearsay statements to medical personnel
Koerschner next contends that the district court erred in admitting prior consistent statements made by the victim to Nurse Reynolds because the statements were hearsay. The statements were made during the first evening of a three-day hospital stay.
NRS 51.115 provides:
Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof are not inadmissible under the hearsay rule insofar as they were reasonably pertinent to diagnosis or treatment.
We conclude that the statements made by the victim to Nurse Reynolds were made during the course of her medical treatment, in accordance with NRS 51.115. While the statements were made after the initial treatment was completed, the statements were pertinent to ongoing care for the victim.[5]

Notice of the charges
Koerschner also contends that the district court erred by failing to dismiss two of the counts against him because the State failed to allege specific dates upon which two of the alleged sexual assaults were committed. Here, the second amended information upon which Koerschner was tried alleged in three separate counts that he committed separate acts of sexual assault during the years 1990, 1991 and 1992. He was convicted on the counts relating to the events alleged to have taken place in 1991 and 1992. The later event, as confirmed by the medical evidence in the case, was alleged to have occurred on a specific date. The 1991 events were generally alleged to have occurred sometime during that year.
In Cunningham v. State, 100 Nev. 396, 401, 683 P.2d 500, 502 (1984), this court held that allegations of time frames rather than specific offense dates were sufficient to place the defense on notice of the charges. Otherwise, convictions for criminal misfeasance would only be valid when the State correctly guesses the date of an offense. We conclude that, given the nature of these charges and the time frames set forth in the second amended information, our previous ruling in Cunningham controls. Thus, no error was committed with regard to this issue.

Prior bad acts of the child-victim
Koerschner sought admission of specific instances of conduct demonstrating that *457 the child-victim was dishonest. He argues on appeal that the specific acts of dishonesty, i.e., thefts from the family, evidenced the child-victim's motive to fabricate the claims of sexual assault. Additionally, Koerschner argues that this testimony was relevant to demonstrate the victim's propensity for untruthfulness in general.
NRS 48.045(2) provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person .... It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Additionally, NRS 50.085(2) states that "[e]vidence of the reputation of a witness for truthfulness or untruthfulness is inadmissible."
We conclude that the district court properly excluded the testimony regarding the victim's alleged prior acts of dishonesty. The record clearly fails to support Koerschner's contention that the victim's past acts provided a motive to lie about the sexual assault. Thus, Koerschner failed to meet the standard set forth in NRS 48.045(2). Also, given the overwhelming evidence supporting Koerschner's guilt, particularly the evidence of the nature of the child's injuries, and given the extraneous nature of the prior bad act evidence, there was no abuse of discretion in the exclusion of this proposed testimony. See Petrocelli v. State, 101 Nev. 46, 52, 692 P.2d 503, 508 (1985).

Evidence of prior abuse
Koerschner further contends that the district court erred by excluding evidence concerning a previous molestation of the child-victim by an individual other than Koerschner. He claims that the other fact pattern was similar to that presented in this case.
Absent an abuse of discretion, a district court's decision whether to admit evidence will not be set aside. See id. at 52, 692 P.2d at 508. Here, the alleged prior sexual abuse involved the alleged rubbing of the victim on her posterior, not vaginal penetration. This claim of past sexual abuse does not provide an alternate cause of the specific injuries sustained by this victim. Thus, we conclude the district court properly excluded any evidence of the prior alleged sexual contacts between this victim and third persons.
Having reviewed all other contentions raised in this appeal and finding them to be without merit, we hereby affirm the judgment below.[6]
YOUNG and LEAVITT, JJ., concur.
ROSE, C.J., concurring.
I concur in affirming Koerschner's convictions because under the existing case law his claims of error are without merit. The State did not present expert psychological evidence, there was substantial corroboration of the child-victim's testimony, and no credible challenge to the child-victim's veracity was made. I write separately because I disagree with the majority's decision to overrule the precedents of the last decade that attempted to level the playing field when the State prosecutes a child sexual assault case with the aid of a psychological expert's testimony.
While most allegations of sexual assault are proven true, false allegations are occasionally made against a party wrongly accused. These false allegations are extremely difficult to defend against and disprove, especially when the victim is a child. As a result, this Court has made every attempt to make the jury trial process fair to the accused, the State, and the victim. Because psychological evidence is often the critical factor in these cases, we have held that a person accused of child sexual assault should, in certain circumstances, have the assistance of a psychologist or psychiatrist if the State has such assistance.
A psychological expert is permitted to testify to how the alleged child victim described the crime, whether the child victim shows signs of being coached in testimony, whether *458 the victim suffers post-traumatic stress, whether the observed condition of the child is consistent with an assault, and whether the victim has been forthcoming rather than evasive. See generally Lickey v. State, 108 Nev. 191, 827 P.2d 824 (1992); Marvelle v. State, 114 Nev. 921, 966 P.2d 151 (1998). This testimony is usually a ringing endorsement of the child victim's testimony and an affirmation that the sexual assault took place. Without the assistance of a psychological expert, the accused is usually at a loss to contest the State's expert evidence, even if it is untrue or grossly exaggerated.
For this reason, this Court in Lickey determined that when the State uses a psychologist or psychiatrist, the district court should give the accused access to such an expert of his or her own unless compelling reasons are shown to protect the child victim. See Lickey, 108 Nev. at 195, 827 P.2d at 826. This Court went on in Keeney v. State, 109 Nev. 220, 850 P.2d 311 (1993) to articulate the four factors the district court should consider in determining whether an accused should be given the assistance of a psychological expert. Thus, a defendant facing accusations of child sexual assault should have the assistance of an expert in psychology or psychiatry if: (1) the State has employed such an expert; (2) the victim is not shown by compelling reasons to be in need of protection; (3) evidence of the crime has little or no corroboration beyond the testimony of the victim; and (4) there is a reasonable basis for believing that the victim's mental or emotional state may have affected his or her veracity. See id. at 226, 850 P.2d at 315.
In Griego v. State, 111 Nev. 444, 893 P.2d 995 (1995), we had the opportunity to review a district court's application of these factors and determined that the court erred by denying the accused the assistance of an expert psychologist. Our analysis in Griego demonstrated two things. First, in balancing the Keeney factors, a district court cannot reach its determination without considering the totality of the factors and may not rely on any single factor. Second, we specifically stated that "absent an affirmative, compelling showing by the State that the alleged victim is in need of protection," the second factor favors examination of the alleged victim by a mental health expert employed by the defendant. Id. at 450, 893 P.2d at 999. Contrary to the majority's reasoning, this language is not ambiguous. It specifically states that it is the State's burden to show "compelling" reasons why the child victim is in need of protection. Furthermore, placing this burden upon the State is appropriate. The State has access to the child victim and most of the evidence in the case, and thus is in a better position to assess whether the child victim is in need of protection.
In Marvelle v. State, 114 Nev. 921, 966 P.2d 151 (1998), we again held that the defendant in a child sexual assault case was improperly denied the assistance of a psychological expert and clearly indicated that each of the four factors should be considered by the district court and that a decision should be reached by weighing and balancing them collectively. Nowhere in Marvelle did we revoke or alter the State's burden of showing that an alleged child victim is in need of protection.
With the above authority in mind, I am baffled how the majority comes to the conclusion that there is some ambiguity in our prior cases on the issue of who has the burden to show that a child victim is in need of protection. In Griego we clearly and unambiguously placed the burden upon the State.
Having found this ambiguity, the majority now places the burden on the accused by reaching back to a case decided two decades ago, Washington v. State, 96 Nev. 305, 608 P.2d 1101 (1980). My objection here is two-fold. First, we have consistently decided differently in the last decade by rejecting Washington on this point. Second, the majority opinion changes the very standard itself by now requiring the accused to prove that there is a compelling reason for an examination, rather than requiring the State to show that there is a compelling need for the protection of the child. The majority thus creates a new burden requiring the accused to establish a point that is very difficult to prove. The accused cannot talk to the alleged child victim or the child victim's health care experts, nor does the accused have the assistance of an expert in the area, *459 which is why the accused brings the motion in the first place.
In addition to shifting the burden to the accused, the majority removes the second Keeney factor from the equation and makes it the trump card of the evaluation process. The majority holds that the determination of whether there is a compelling need for an examination by the defense is the "overriding judicial question which must be resolved based upon the other three factors." How this will work in practice, I have not a clue. But we should not stray from this Court's overriding judicial concern of procedural fairness. Because the criminal process begins with a presumption of innocence, procedural fairness must always be our primary focus.
The decision today returns us to a less equitable rule of law and means that it will be much more difficult for a person accused of child sexual assault to get the assistance of a psychologist or other appropriate health care expert at trial, even if the State uses such an expert. This will make the trial of child sexual assault cases less fair in some instances, and therefore the final verdict less reliable.
SHEARING, J., with whom AGOSTI, J., agrees, concurring.
I concur in the majority opinion, but write separately to respond to a statement in the other concurring opinion.
The other concurring opinion suggests that the defendant in a child sexual assault case needs to conduct a psychological examination of the child victim in order to "level the playing field." I agree that there is no "level playing field" in child sexual assault cases. However, it is my experience that in such cases, the so-called "playing field" is virtually always tipped heavily against the child victim, rather than against the defendant.
In my observations as a trial judge and juvenile judge, only a very small percentage of child sexual assaults ever reach the criminal courts. Children are often too young to testify or would be too traumatized to testify effectively. Children often do not tell others immediately about being sexually assaulted because of shame, guilt or threats by the perpetrator. When they do tell, the adults whom they tell often refuse to believe them. Then, instead of talking about the assault, the child victims often try to both deny it themselves and forget about it. In their anger, they start acting out inappropriately. In an attempt to hide their pain, child victims may become drug or alcohol abusers. Thus, they are even less likely to be regarded as good witnesses when they finally do tell, despite the fact that the sexual assault often led to the bad behavior in the first place. Moreover, the perpetrators almost invariably claim that the child made the allegation in response to attempts to discipline the child, which many adults, including jurors, automatically believe.
As a trial tactic, the perpetrators often ask for a psychological examination in order to further demean and harass the child victim. That is why I agree with the majority opinion that the defendant should be allowed to conduct a psychological examination of the child victim only in the rare cases when there is a compelling reason to do so. The "playing field" is already tipped too far in favor of the perpetrator.
AGOSTI, J., concur.
NOTES
[1] Koerschner originally pleaded guilty to one count of sexual assault upon the person of a minor under the age of fourteen years. Two separate counts were dismissed as part of plea negotiations, and he received a single sentence of life in the Nevada State Prison, which stipulated that he would be eligible for parole after five years. Thereafter, alleging that the guilty plea canvass was faulty, Koerschner sought relief via a petition for a writ of habeas corpus, which was denied by the district court. On appeal, this court reversed and remanded the matter to the district court for further proceedings. See Koerschner v. State, 111 Nev. 384, 892 P.2d 942 (1995). Thereafter, the second amended information was filed in the district court and trial proceedings commenced.
[2] In Washington, the prosecution did not seek to introduce expert testimony on the question of the mental state of the alleged victim. We affirmed the district court's refusal to allow an independent examination of the victim.
[3] Keeney words the second factor, in terms of whether "the victim is not shown by compelling reasons to be in need of protection." Keeney v. State, 109 Nev. 220, 226, 850 P.2d 311, 315 (1993). This assumes that an examination should be ordered unless the State met a burden of proving that the victim is in need of protection. As noted, this changed the statement of the rule as articulated in Washington. We have therefore reworded this consideration so that the burden is on the defendant to prove, based upon the other three former Keeney factors, that compelling circumstances exist to justify the intrusion.
[4] Keeney does not hold that an independent examination may never be ordered unless the State calls or obtains benefit from an expert. Rather, it holds that error is committed when a defendant in a child-victim case is refused such an examination if the State has the benefit of an expert analysis and the other three factors are satisfied. There may be situations where the veracity of a child witness may be brought into question because of his or her emotional or mental state, even though the State has had no access to or benefit from an expert.
[5] The State argues that the prior consistent statements to Nurse Reynolds were admissible as non-hearsay under NRS 51.035(2)(b). In light of our ruling that the statements were admissible under NRS 51 .115, we need not reach this issue. Additionally, it was not necessary for the district court to conduct a separate "trustworthiness" hearing under Lytle v. State, 107 Nev. 589, 590, 816 P.2d 1082, 1083 (1991), the statements of this victim having been admissible under a well recognized hearsay exception.
[6] I would note my agreement with the points made by Shearing, J., in her separate concurrence.

The Honorable Nancy A. Becker, Justice, voluntarily recused herself from participation in the decision of this appeal.