AARON CLARK AND DAVID MAY II, CO-EXECUTORS OF THE ESTATE OF WILBUR D. MAY, DECEASED, PETITIONERS, *v.* SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA; AND THE HONORABLE PETER I. BREEN, DISTRICT JUDGE, RESPONDENTS, AND BINNEY A. EVANS, REAL PARTY IN INTEREST.

No. 15339

January 4, 1985                                        692 P.2d 512

[Rehearing denied May 21, 1985]

*Woodburn, Wedge, Blakey and Jeppson,* and *Suellen E. Fulstone,* Reno, for Petitioners.

*Breen, Young, Whitehead, Belding & Hardesty, Chartered,* Reno, for Respondents and Real Party in Interest.

## OPINION

*Per Curiam:*

The petitioners are co-executors of the estate of Wilbur D. May, deceased, and defendants in a suit brought in the respondent district court by May's ex-wife, Binney A. Evans, the real party in interest. They now apply for a writ of mandamus or prohibition directing the district court to vacate two pretrial discovery orders. Petitioners claim that discovery of May's prior wills and codicils, and of testimony of May's attorney regarding a divorce settlement agreement between May and Evans, is barred by the attorney-client privilege. They also claim that the district court exceeded its jurisdiction in ordering blanket discovery of May's post-divorce income tax returns.

Wilbur D. May died in January of 1982, at the age of 83. He left an estate in excess of $71,000,000. Evans and May were married from November 1953 until their divorce in April, 1963. May's last will, dated August 1, 1981, was admitted to probate in February of 1982. The will mentioned Evans only to the extent of forgiving her for any debts which she might have owed decedent. Evans filed two claims against the estate: one for alimony which she claimed was due, and the second claim for $1,000,000 which she asserted was due her under an oral contract. Evans claimed that May agreed to leave her that amount at the time of the divorce. Both the claims were disapproved, and this suit followed.

By an amended complaint Evans sued for $1,000,000 in damages predicated upon a breach of contract, and the imposition of a constructive trust on May's estate for that sum. Evans also sought to set aside the 1963 property agreement entered into at the time of the parties' divorce, and to recover damages resulting from misrepresentations allegedly made to her by May at the time of the divorce.

During discovery below, defendants objected to Evans' request for production of any wills or codicils to wills, or drafts thereof, made by or prepared for decedent, by asserting the attorney-client privilege. They also objected to plaintiff's attempts to depose Richard W. Blakey, May's attorney, regarding the preparation of such wills and codicils, and Blakey's communications with decedent, or other attorneys for decedent, with respect to the 1963 divorce and property settlement agreement on the same ground. In addition, defendants objected to the request for production of decedent's tax returns, at least for the years after the termination of decedent's marriage to Evans.

The district court, after hearings, ordered that all wills and codicils made by or prepared for May be produced, as well as all documents relevant to any agreement between Evans and May to make a will or codicil or otherwise dispose of property for the benefit of Evans. The court further held that there was "no lawyer-client privilege" with respect to any oral or written communications between May and his attorneys regarding any divorce settlement agreement with Evans. In addition, the court ordered production of all income tax returns of the decedent from 1953 through the date of his death.

In this petition the co-executors of the decedent's estate contend that the attorney-client privilege protects the confidences of the decedent, and that the court exceeded its jurisdiction in ordering production of the tax returns for the period after the marriage of the parties.

## ATTORNEY—CLIENT PRIVILEGE

The attorney-client privilege has its origins in the earliest days of the common law. *See* 8 Wigmore, Evidence, section 2290 (McNaughton rev. 1961). This Court laid down the reason for the privilege as follows:

> In the complicated affairs and relations of life, the counsel and assistance of those learned in the law often becomes necessary, and to obtain it men are frequently forced to make disclosures which their welfare, and sometimes their lives, make it necessary to be kept secret. Hence, for the benefit and protection of the client, the law places the seal of secrecy upon all communications made to the attorney in the course of his professional employment, and the courts are expressly prohibited from examining him as a witness upon any facts which may have come to his knowledge through the medium of such employment.

Mitchell v. Bromberger, 2 Nev. 345, 348-349 (1866).

The general rule is that such privilege survives the termination of the relationship, and even the death of the client. *See, e.g.,* Glover v. Patten, 165 U.S. 394 (1897); United States v. Osborn, 561 F.2d 1334 (9th Cir. 1977); Russell v. Jackson, 9 Hare 387, 68 Eng. Rep. 558 (Ch. 1851). As Wigmore has stated:

> The subjective freedom of the client, which it is the purpose of the privilege to secure . . . , could not be attained if the client understood that, when the relation ended or even after the client's death, the attorney could be compelled to disclose the confidences, for there is no limit of time beyond which the disclosures might not be used to the detriment of the client or of his estate.

8 Wigmore, *supra,* section 2323, at 630. (Reference omitted.)

These common law rules are reflected in Nevada's statutes. NRS 49.095 provides:

> A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, confidential communications:
> 1. Between himself or his representative and his lawyer or his lawyer's representative.
> 2. Between his lawyer and the lawyer's representative.
> 3. Made for the purpose of facilitating the rendition of professional legal services to the client, by him or his lawyer

to a lawyer representing another in a matter of common interest.

NRS 49.105(1) provides that the "privilege may be claimed" not only by the client, but also by "the personal representative of a deceased client."

Evans, however, claims that the privilege does not apply to the case at bar. She predicates her argument upon the provision of NRS 49.115(2) that there is no attorney-client privilege "[a]s to a communication relevant to an issue between parties who claim through the same deceased client, regardless of whether the claims are by testate or intestate succession or by inter vivos transaction." We do not agree that such an extension of the common law rule was intended by the legislature of this state.

An exception to the application of the privilege on behalf of a deceased client has long been recognized when the dispute is between various parties claiming "through" or "under" the client, as opposed to a dispute between the estate and a "stranger." In Glover v. Patten, *supra,* 165 U.S. at 406, the United States Supreme Court held that

> in a suit between devisees under a will, statements made by the deceased to counsel respecting the execution of the will, or other similar document, are not privileged. While such communications might be privileged, if offered by third persons to establish claims against an estate, they are not within the reason of the rule requiring their exclusion, when the contest is between the heirs or next of kin.

The distinction between "parties claiming under the client as against parties claiming adversely to him," is set forth by the court in Russell v. Hare, *supra,* 9 Hare at 392, as quoted by the Supreme Court, 165 U.S. at 407. "In the one case the question is, whether the property belongs to the client or his estate, and the rule may well apply, for the protection of the client's interests. In the other case the question is, to which of two parties claiming under the client the property in equity belongs, and it would seem to be a mere arbitrary rule to hold that it belongs to one of them rather than to the other."

The Advisory Committee Note to the Draft Federal Rule of Evidence, section 503, from which Nevada's statute was drawn, states the reason for the exception as follows, 11 Moore's Federal Practice, sec. 503 App. [5.-2]-(2), at App. I-41 (2d ed. 1982):

> Normally the privilege survives the death of the client and may be asserted by his representative. . . . When, however,

the identity of the person who steps into the client's shoes is in issue, as in a will contest, the identity of the person entitled to claim the privilege remains undetermined until the conclusion of the litigation. The choice is thus between allowing both sides or neither to assert the privilege, with authority and reason favoring the latter view. . . .

The question presented in the instant case is whether Evans is a "stranger," as the term is used by the courts with regard to this issue, or whether she should, in the language of the statute, be considered as one claiming "through the same deceased client". We are of the view that as the plaintiff in a suit in which the essence of her claims are breach of contract and misrepresentation by the decedent, Evans must be considered as claiming "against" rather than "through" decedent, and the exception to the privilege does not apply to Evans.

This view is consistent with the position of the majority of the courts which have directly considered the question of the application of the privilege to parties whose claim to a share of an estate rests merely on a claim that the decedent breached a contract to leave them property in a will.

In Doyle v. Reeves, 152 A.882 (Conn. 1931), the court held that the executor could raise the attorney-client privilege to bar testimony of decedent's attorney regarding a proposed will. Plaintiff claimed such testimony would corroborate her allegation of a contract to will her property. The court held that "the action is one between the testator's representative and a stranger in legal contemplation, not claiming under him." *Id.* at 884. The Supreme Court of Wisconsin, in Re Smith's Estate, 57 N.W.2d 727 (Wis. 1953), similarly held that the former wills and codicils prepared by the attorney of deceased wife were privileged against disclosure to the nieces of deceased husband, who claimed to be the beneficiaries of an alleged contract between the two of them for a certain testamentary disposition. The nieces claimed that they were not "strangers," but were claiming certain specific property "through the testatrix." The court responded: "We cannot follow the logic of such contention. If claimants were claiming as legatees under the will of testatrix, or as her heirs at law, they would be claiming under or through the testatrix. However, they do not so claim but on the contrary their claim is based upon breach of contract by testatrix which of necessity makes the same adverse to testatrix and her estate." *Id.* at 730.

Similarly holding that a claimant asserting breach of contract to will is a "stranger" to the estate, and therefore not entitled to

claim an exception to the attorney-client privilege are De Loach v. Myers, 109 S.E.2d 777 (Ga. 1959); Estate of Voelker, 396 N.E.2d 398 (Ind.App. 1979); Stegman v. Miller, 515 S.W.2d 244 (Ky. 1974); McCaffrey v. Estate of Brennan, 533 S.W.2d 264 (Mo.App. 1976).[1]

We therefore conclude that the exception to the privilege does not apply, and that the court below exceeded its jurisdiction in ordering production and disclosure of privileged communications between the decedent and his attorney.

## INCOME TAX RETURNS

In Schlatter v. District Court, 93 Nev. 189, 561 P.2d 1342 (1977), we held that an order permitting "carte blanche discovery of all information" contained in income tax returns "without regard to relevancy" was beyond the jurisdiction of the respondent court. We also noted that discovery of material in such returns "may not be approved in the absence of a showing that the information is otherwise unobtainable." *Id.* at 192, 561 P.2d at 1343.

The district court exceeded its jurisdiction under our ruling in *Schlatter* in ordering the production of the decedent's entire tax returns without specifying the items requested and the relevancy thereof.

## CONCLUSION

A writ shall issue vacating that part of the orders which directed the petitioners to disclose the previous wills and codicils of the decedent and written or oral communications concerning them, as well as communications regarding the divorce and property agreement which are protected by the attorney-client relationship. The writ shall also direct the court below to vacate the court's order requiring the production of May's tax returns from 1964 to May's death. Upon a proper showing the court may

---

[1] Evans urges that because a party may claim "through" a decedent by "intervivos transaction" under our statute, the intent of the legislature was to include claimants asserting breach of contract to make a will. *See* Ervesun v. Bank of New York, 239 A.2d 10 (N.J.Super.App.Div. 1968). We cannot agree. Courts have long held that the exception should apply when a grantee, claiming through decedent by virtue of a deed, for example, is involved in a dispute with the heirs or legatees and devisees over which disposition represented the true intent of the decedent. *See, e.g.,* Olsson v. Pierson, 25 N.W.2d 357 (Iowa 1946). In this case, on the other hand, Evans makes no claim that the true intent of the decedent was to leave the property to her. On the contrary, she asserts that his intention was wrongful as to her. Unlike the grantee, she cannot claim to "stand in the shoes" of the decedent.

thereafter enter an order directing disclosure of information in the tax returns consistent with its jurisdiction and this opinion.

SPRINGER, MOWBRAY, STEFFEN, GUNDERSON, J.J., and Fondi, D.J.[2] concur.