[No. A072460. First Dist., Div. Four. Apr. 17, 1996.]

CLAIRE M. FLETCHER, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
AMERICAN CANCER SOCIETY et al., Real Parties in Interest.

774

COUNSEL

Knox Ricksen, Mark L. Cederborg, Seltzer, Caplan, Wilkins & McMahon and Michael R. Seyle for Petitioner.

No appearance for Respondent.

Hanson, Bridgett, Marcus, Vlahos & Rudy, Kim T. Schoknecht, Kevin M. O'Donnell and Michael B. McNaughton for Real Parties in Interest.

OPINION

HANLON, J.—Petitioner Claire M. Fletcher seeks a writ to require respondent court to vacate its order compelling disclosure of documents which petitioner claims are protected by the attorney-client privilege. As explained below, we hold that communications between petitioner and Attorney Thomas R. Mitchell do not fall within the exception to the attorney-client privilege found in section 957 of the Evidence Code as claimed by real party in interest Salvation Army.

## FACTS AND PROCEDURAL HISTORY

On or about March 24, 1995, the American Cancer Society and Shriners Hospital for Crippled Children filed a petition to determine invalidity of trust. The Salvation Army joined in the petition. The petition alleged that Alberta V. Irvine died on October 28, 1994, survived by her sister Claire Fletcher (hereafter petitioner) and petitioner's children and grandchildren, Mrs. Irvine's only known relatives. Mrs. Irvine had executed a trust and pour-over will on February 1, 1991, which trust is currently administered by petitioner. The trust made changes in the disposition of Mrs. Irvine's property upon her death which were more favorable to petitioner and less favorable to the charities than had been the disposition in a prior trust executed on January 15, 1991. On October 20, 1992, Mrs. Irvine executed a new will and amendment to the trust which expressly disinherited petitioner and any members of her family and left Mrs. Irvine's entire property to real parties. Upon Mrs. Irvine's death, the will of February 1, 1991, was admitted to probate and petitioner was appointed executor.

The charities alleged in their petition (1) that the trust and will of February 1, 1991, was revoked by the will and amendment of October 20, 1992, and (2) that the trust and will of February 1, 1991, was a result of the undue influence of petitioner.[1]

On December 1, 1995, the Salvation Army filed a motion on shortened time to compel petitioner to produce documents withheld on the ground of attorney-client privilege and attorney work product protection. Petitioner opposed the motion which was heard on December 7, 1995. Petitioner does not challenge the disposition of the motion insofar as it related to work product protection.

Declarations attached to the opposition to the motion to compel, contained the following information. Prior to January of 1991, Mitchell had acted as the attorney for Colonel Eugene B. Fletcher and his wife, petitioner Claire M. Fletcher, with respect to family estate planning matters, as well as other family legal problems. Sometime in January of 1991, petitioner called Mitchell asking him to consult with her sister Alberta Irvine about some questions she had regarding an estate plan that had been prepared for her by another attorney. Mitchell did so and the result was the drafting and execution of the trust and pour-over will dated February 1, 1991. In July 1991 and

---

[1]The petition to determine invalidity of trust was filed in San Diego County. It and other proceedings involving the estate of Alberta V. Irvine were coordinated and transferred to Alameda County. The First District Court of Appeal was designated as the reviewing court having appellate jurisdiction.

in November 1991, Mrs. Irvine asked Mitchell to prepare amendments to the trust and Mitchell did so. In late May 1992, petitioner called Mitchell to tell him that her sister was very confused, claiming that she had no money. Soon thereafter Mitchell received a letter from George Rogers, an attorney, who stated that he now represented Mrs. Irvine. Discussions between Rogers, Mitchell and Mrs. Irvine were held, concluding with a decision that Mitchell continue to represent Mrs. Irvine and the estate plan remain unchanged. During this period, Mitchell acted as Mrs. Irvine's counsel and also represented petitioner as trustee of Mrs. Irvine's trust. In August 1992, petitioner received a notice of intent to remove trustees. Attorney Mitchell referred petitioner to her present law firm to preclude any potential conflict of interest problems that might arise.

## DISCUSSION

Evidence Code section 954 provides that the client, whether or not a party, has a privilege to refuse to disclose and to prevent another from disclosing a confidential communication between client and lawyer.

■ There is no dispute as to the existence of an attorney-client relationship between Mitchell and petitioner. He represented her in her capacity as trustee of the Irvine trust and the letters and phone call between Mitchell and petitioner were relevant to petitioner's activities in that role. In opposition to the instant petition, however, the Salvation Army has questioned whether an attorney-client relationship existed between Mitchell and petitioner's sons. It appears that there is no basis for the existence of such a relationship. Therefore, we conclude that the order should be upheld as it relates to the production of the letter from Mitchell to the Fletcher sons.

■ The attorney for the trustee of a trust is not, by virtue of this relationship, also the attorney for the beneficiaries of the trust. The attorney represents only the trustee. (*Goldberg* v. *Frye* (1990) 217 Cal.App.3d 1258, 1269 [266 Cal.Rptr. 483]; *Lasky, Haas, Cohler & Munter* v. *Superior Court* (1985) 172 Cal.App.3d 264, 282 [218 Cal.Rptr. 205].) ■ Further, Attorney Mitchell stated in deposition that he had never represented Grant Fletcher or Richard Fletcher so there is no evidence that Mitchell ever acted in a dual capacity with regard to these beneficiaries.

Attorney Mitchell did, however, act in a dual capacity in representing Mrs. Irvine and petitioner, as trustee of the trust, at least until he withdrew from representation of petitioner to avoid a conflict of interest. The Salvation Army initially argued that this dual capacity triggered the exception of Evidence Code section 962 to the attorney-client privilege. That section

provides that "[w]here two or more clients have retained or consulted a lawyer upon a matter of common interest, none of them, nor the successor in interest of any of them, may claim a privilege under this article as to a communication made in the course of that relationship when such communication is offered in a civil proceeding between one of such clients (or his successor in interest) and another of such clients (or his successor in interest)."

Apparently the Salvation Army no longer relies on this exception and it clearly does not apply. Petitioner, the past conservator of Mrs. Irvine's estate and person, and trustee under the 1991 trust, is the successor to Mrs. Irvine and the holder of her privileges.[2] Furthermore, as the petition points out, there is no action pending between petitioner and Mrs. Irvine, the two joint clients. The exception of Evidence Code section 962 is limited to claims between joint clients, and the Salvation Army was never a client of Attorney Mitchell.

The exception to the attorney-client privilege that was applied by respondent court is that found in Evidence Code section 957 (hereafter section 957) which provides: "There is no privilege under this article as to a communication relevant to an issue between parties all of whom claim through a deceased client, regardless of whether the claims are by testate or intestate succession or by inter vivos transaction." Although the language of section 957 does not specify to what attorney-client relationship it refers, petitioner contends, and we agree, that it refers only to the relationship between the attorney and the deceased client. ■ This limitation is implicit in the statute's reference to a "client" who is "deceased," and this interpretation is supported by the commentary of the Law Revision Commission, which drafted the statute (McDonough, *The California Evidence Code: A Précis* (1966) 18 Hastings L.J. 89), as well as authority in other jurisdictions.

The Law Revision Commission has stated that the statute was intended to modify existing law as reflected in *Paley v. Superior Court* (1955) 137 Cal.App.2d 450 [290 P.2d 617]. (7 Cal. Law Revision Com. Rep. (Dec. 1965) p. 176.) The *Paley* case, in turn, involved "certain aspects of the problem of the extent of survival after death of a *testator's privilege* against disclosure by his attorney of confidential communications *made by the testator* in connection with the preparation and execution of his will." (*Paley v. Superior Court, supra,* at p. 452, italics added.) The commission explained that "[t]he traditional exception for litigation between claimants by testate or

---

[2] The instant petition states without dispute that Mrs. Fletcher was conservator of Mrs. Irvine's estate and person from the imposition of a conservatorship over Mrs. Irvine on October 1, 1992, until Mrs. Irvine's death on October 28, 1994.

intestate succession is based on the theory that claimants in privity with the estate claim through the client, not adversely, and the deceased client presumably would want *his communications* disclosed in litigation between such claimants so that his desires in regard to the disposition of his estate might be correctly ascertained and carried out." (7 Cal. Law Revision Com. Rep., *supra*, p. 176, italics added and deleted.) It is evident from this commentary that section 957 was meant to refer only to communications between the decedent and the decedent's attorney.

Section 957 does not appear to have been construed in any published California case, but virtually identical language in a Nevada statute was discussed in *Clark* v. *Second Judicial Dist. Court* (1985) 101 Nev. 58 [692 P.2d 512],[3] in a manner which supports our interpretation of section 957. The *Clark* opinion observed that "[a]n exception to the application of the *privilege on behalf of a deceased client* has long been recognized when the dispute is between various parties claiming 'through' or 'under' the client, as opposed to a dispute between the estate and a 'stranger.' In *Glover* v. *Patten* [(1897) 165 U.S. 394, 406 (41 L.Ed. 760, 767, 17 S.Ct. 411)], the United States Supreme Court held that 'in a suit between devisees under a will, *statements made by the deceased to counsel* respecting the execution of the will, or other similar document, are not privileged. While such communications might be privileged, if offered by third persons to establish claims against an estate, they are not within the reason of the rule requiring their exclusion, when the contest is between the heirs or next of kin.' " (*Clark* v. *Second Judicial Dist. Court, supra*, 692 P.2d at pp. 514-515, italics added.) This analysis presupposes that the privilege to which the exception applies is only for communications between the decedent and the decedent's attorney. (See also, e.g., *Lamb* v. *Lamb* (1984) 124 Ill.App.3d 687 [80 Ill.Dec. 8, 464 N.E.2d 873, 877-878] [exception applied where parties were all devisees of "the decedent who had the privilege"]; *In re Estate of Brzowsky* (1954) 267 Wis. 510 [66 N.W.2d 145, 147] ["many authorities" for exception to "the rule of privilege of communication between testator and his attorney"].)

 There is nothing in the explanation of the Law Revision Commission or in the cases referring to the exception embodied in section 957 that

---

[3]The Nevada statute refers to " 'a communication relevant to an issue between parties *who* claim through *the same* deceased client' " (*Clark* v. *Second Judicial Dist. Court, supra*, 692 P.2d at p. 514, citing Nev. Rev. Stat. § 49.115(2), italics added), rather than "parties *all of whom* claim through *a* deceased client" as in section 957 (italics added), but these minor differences are immaterial to the point at issue. Interpretation of the Nevada statute is especially pertinent to our problem because that statute was derived from section 957. (See *Clark* v. *Second Judicial Dist. Court, supra*, 692 P.2d at p. 515 [Nevada statute was drawn from Draft Fed. Rules Evid., rule 503, 28 U.S.C.]; Wright & Graham, Federal Practice & Procedure (1986) Evidence, § 5502, pp. 528-530 [Draft Fed. Rules Evid., rule 503(d)(2) was copied from § 957].)

sugests the exception could apply, as the Salvation Army contends, to communications between one of the claimants and that claimant's attorney. All of the documents between Attorney Mitchell and Mrs. Irvine have been disclosed. These are the only documents to which this exception applies.

Let a peremptory writ issue directing respondent court to vacate its ruling granting the motion to compel insofar as the order relates to communications between petitioner and Attorney Mitchell and to issue a new order denying that portion of the motion.

Anderson, P. J., and Poché, J., concurred.