THE STATE OF NEVADA, Petitioner, *v.* THE EIGHTH JUDI-
CIAL DISTRICT COURT OF THE STATE OF NEVADA, in
and for THE COUNTY OF CLARK, and THE HON-
ORABLE JOHN S. McGROARTY, District Judge,
Respondents, and ROBERT ROMANO, Real Party in
Interest.

No. 41577

September 16, 2004                                    97 P.3d 594

*Brian Sandoval,* Attorney General, Carson City; *David J. Roger,*
District Attorney, and *Douglas W. Herndon* and *James Tufteland,*
Chief Deputy District Attorneys, Clark County, for Petitioner.

*Law Offices of Barry Levinson* and *Carol A. Kingman* and *Barry
Levinson,* Las Vegas, for Real Party in Interest.

## OPINION

By the Court, AGOSTI, J.:

Real party in interest Robert Romano is charged in an indictment with four counts of sexual assault of a minor under fourteen years of age and ten counts of lewdness with a child under fourteen years of age. The district court granted Romano's motion to compel the child victim to submit to an independent psychological examination. The State requests that this court issue a writ of prohibition, or in the alternative, mandamus, to prevent the Eighth Judicial District Court from enforcing its May 5, 2003, order granting Romano's motion for an independent psychological examination of the victim.

### FACTS

Robert Romano and his girlfriend are the natural parents of the child victim, born May 5, 1997. The couple and their child lived together in an apartment in Las Vegas until the couple's relationship began to deteriorate and the mother moved out. In August or September 2002, Romano moved into a house in North Las Vegas. Romano and the mother agreed that the child would reside with Romano during the week so that the child could attend a better school. Romano claims that the mother asked him to take the child full time because she was not capable of taking care of the

child and wanted the child to live in a better neighborhood. Romano claims that, due to the mother's job as a stripper, she rarely visited the child.

Romano also claims that shortly after his move, the mother informed him that she had obtained stable employment as a waitress, was ready to assume more parental responsibilities and wanted the child to reside with her. Romano refused the mother's request because he felt the child had become accustomed to his home, neighborhood and school. Romano states that as a result of his refusal a custody dispute ensued.

In November 2002, the child allegedly told her mother that Romano had engaged in inappropriate activities with her. The mother contacted Nevada Child Protective Services and, at that agency's request, took the child to Sunrise Hospital for evaluation. Doctor Harold Zilberman, a pediatric emergency physician at Sunrise, testified before the grand jury that the findings of the child's examination were normal, meaning that there were no signs of trauma, but that this did not necessarily preclude the possibility of sexual assault.

On December 19, 2002, the five-year-old child testified before the grand jury that she knew people were not supposed to touch certain areas of her body. She testified that she had touched Romano's "ding-ding" with her hands. She also demonstrated how she touched him and that, when she did, "lotion" came out of the hole. The child also stated that her father put his "ding-ding" in her mouth. This activity occurred both at the apartment shared by her parents and later at her father's house. The child testified that Romano had touched her butt with his hands and mouth while they were both naked and that he told her not to tell anyone. The child's mother was not present in the courtroom when the child testified.

The mother testified to the grand jury that she was not fabricating or lying to get Romano in trouble. She testified that she did not seek a change in custody until the child had told her about Romano's behavior. Romano did not testify before the grand jury. Instead, he requested that the prosecutor tell the grand jury that the mother had

> fabricated these charges and used the child either for financial gain or to get revenge on Robert Romano because she thought Robert Romano was going to bring child custody proceedings to take the child away from her because of her unfitness as a mother and her physical abuse of the child.

Detective Jay Roberts also testified before the grand jury concerning his interview with Romano. Detective Roberts testified that initially Romano denied all the allegations and stated that he had

never showered or bathed with the child. Romano insisted that the child's mother had coached the child and that the mother exposed the child to sex movies. Romano also told Detective Roberts that the child strikes sexy poses like Britney Spears. As the interview progressed, however, Romano admitted bathing with the child and sleeping in the same bed while both were clothed. Romano also told the detective that, on several occasions when he was on the computer, the child had reached into his gym shorts and grabbed him. Detective Roberts testified that Romano then admitted that the child had probably grabbed his penis in the shower when they lived in the apartment. Romano also related to Detective Roberts that the child had once caught him masturbating in the bathroom and that that is where she had seen the ''lotion.''

Detective Roberts further testified that, when he asked Romano why the child had told the detective that her father put his mouth on her ''peck-peck,'' the child's term for vagina, Romano stated that he had to sniff her vagina after she bathed to make sure she was clean, and that perhaps his nose or moustache accidentally touched the child. He said that the child's mother made him do it. Romano told the detective that the child had also told him to kiss her ''peck-peck'' and her butt.

On January 10, 2003, the grand jury returned a true bill and Romano was then indicted on four counts of sexual assault of a minor under fourteen years of age and ten counts of lewdness with a child under fourteen years of age. On April 10, 2003, Romano moved for an independent psychological examination of the victim, alleging that there was no corroborating evidence other than the victim's testimony and that a reasonable basis existed for believing the victim's mental or emotional state may have affected her veracity. The district court granted Romano's motion and the State thereafter filed, with this court, a petition for a writ of prohibition or, alternatively, for a writ of mandamus.

## DISCUSSION

*Writ relief*

We first consider whether a petition for writ relief seeking either to prevent the district court from enforcing its order or compelling it to vacate its order is proper in the instant case. Both mandamus and prohibition are extraordinary remedies, and are only appropriate when a plain, speedy and adequate remedy at law is not available.[2] ''A writ of mandamus is available to compel the performance of an act which the law requires as a duty resulting from an office,

[2]NRS 34.170; NRS 34.330.

trust or station, NRS 34.160 . . . ."[3] A "writ of prohibition is the counterpart of the writ of mandate" and is available to halt a tribunal's proceedings "when such proceedings are without or in excess of the jurisdiction of such tribunal."[4] Petitions for extraordinary relief are not meant to control discretionary acts, " 'unless discretion is manifestly abused or is exercised arbitrarily or capriciously.' "[5] Finally, whether to grant the extraordinary remedy of writ relief is within the court's sound discretion.[6]

The instant petition follows the district court's order compelling an independent psychological examination of the victim. We have previously held that writ relief is available to prevent improper discovery.[7] Moreover, we have held that "prohibition is a more appropriate remedy for the prevention of improper discovery than mandamus."[8]

In the instant case, a plain, speedy and adequate remedy at law is not available to the State. If improper discovery proceeds, this young alleged sexual assault victim will be unnecessarily subjected to an intrusive examination and the State will have no effective remedy to cure the improper discovery. Delayed consideration of this procedural issue until after completion of the trial will irreparably intrude upon the minor child's privacy rights. Under this circumstance, we consider entertainment of writ relief necessary. Accordingly, we conclude that the State's petition for a writ of prohibition is the appropriate vehicle for challenging the order compelling a psychological examination of the minor child.

## Jurisdiction of trial courts

Because the Nevada Constitution does not grant a right to discovery in a criminal case or a right to order an alleged sexual assault victim to submit to psychological examination, the State suggests that we must find authority for such an examination in either statutory law or common law.[9]

[3]*Panko v. District Court,* 111 Nev. 1522, 1525, 908 P.2d 706, 708 (1995).

[4]NRS 34.320.

[5]*State of Nevada v. Dist. Ct. (Anzalone),* 118 Nev. 140, 147, 42 P.3d 233, 237-38 (2002) (quoting *Round Hill Gen. Imp. Dist. v. Newman,* 97 Nev. 601, 604, 637 P.2d 534, 536 (1981)).

[6]*Id.* at 146, 42 P.3d at 237.

[7]*Wardleigh v. District Court,* 111 Nev. 345, 350, 891 P.2d 1180, 1183 (1995); *Clark v. District Court,* 101 Nev. 58, 64, 692 P.2d 512, 516 (1985); *Schlatter v. District Court,* 93 Nev. 189, 193, 561 P.2d 1342, 1344 (1977).

[8]*Wardleigh,* 111 Nev. at 350, 891 P.2d at 1183.

[9]*State v. Gabrielson,* 464 N.W.2d 434, 436-37 (Iowa 1990) (noting that, because a defendant does not have a constitutional right to a psychiatric exami-

### Statutory authority

The State argues that the closest statutory sources empowering the trial court to order an alleged sexual assault victim to submit to a psychological examination are NRS 174.235 and NRCP 35, but that neither the statute nor the rule grants sufficient authority to the trial courts.

Although NRS 174.235 codifies discovery powers in criminal cases, the ability to discover reports of mental examinations of an alleged victim is limited to reports within the State's possession. NRS 174.235 does not grant trial courts the authority to require an alleged victim, who is, after all, a witness in the action but not a party to the action, to submit to psychological examination. NRCP 35 authorizes a trial court to order a party in a civil suit to submit to a mental examination when the mental condition of that party is in controversy. However, this authority cannot be extended to the criminal arena because, in a criminal case, the complaining witness is not a party to the action. We observe, therefore, that no statutory authority exists for trial courts to order a psychological examination of a complaining witness in a criminal prosecution for sexual assault.

### Common-law authority

The judiciary is inherently vested with the power to promulgate its own rules of procedure when " 'necessary or desirable to handle the business of the courts or their judicial functions,' "[10] or "when necessary in the interests of justice."[11] Because the psychological examination of a victim "could be crucial to the truth-seeking process,"[12] we have, in the past, concluded that a trial court may order a sexual assault victim to submit to a psychological examination under certain limited circumstances.

In *Washington v. State,*[13] we stated that trial courts have discretionary authority to order the psychological examination of a sexual assault victim. In support of our conclusion, we cited case law from Arizona and California: *State v. Jerousek*[14] and *Ballard v.*

---

nation of a sexual abuse victim to determine the victim's credibility, a trial court's authority to order such an examination must be based on statutory or common law).

[10]*State v. Dist. Ct.,* 116 Nev. 953, 959, 11 P.3d 1209, 1213 (2000) (quoting *Galloway v. Truesdell,* 83 Nev. 13, 23, 20, 422 P.2d 237, 244, 242 (1967) (noting that "any power or authority that is inherent or incidental to a judicial function is properly within the realm of judicial power")).

[11]*Gabrielson,* 464 N.W.2d at 437.

[12]Judith Greenberg, Note, *Compulsory Psychological Examination in Sexual Offense Cases: Invasion of Privacy or Defendant's Right?* 58 Fordham L. Rev. 1257, 1259-60 (1990).

[13]96 Nev. 305, 307, 608 P.2d 1101, 1102-03 (1980).

[14]590 P.2d 1366 (Ariz. 1979).

*Superior Court of San Diego County.*[15] In those cases, those courts empowered the trial courts with discretionary authority to order a sexual assault victim to submit to psychological examination. *Jerousek,* while still the law in Arizona, relied heavily on *Ballard,*[16] which has since been superseded by California Penal Code § 1112.[17] The *Ballard* court had articulated antiquated beliefs that women falsely accuse men of sex crimes "as a result of a mental condition that transforms into fantasy a wishful biological urge," from aggressive tendencies directed to the accused or from "a childish desire for notoriety."[18] In overruling *Ballard,* in 1986, the California Supreme Court acknowledged that "previous expectational disparities, which singled out the credibility of rape complainants as suspect, have no place in a modern system of jurisprudence."[19]

While we relied on the holding in *Ballard* for our decision in *Washington,* we failed to discuss our reasoning for granting trial courts the discretionary authority to order psychological examination of an alleged sexual assault victim. Nor do our decisions subsequent to *Washington* clarify our reasoning.[20] Although we unequivocally disapprove of the antiquated beliefs concerning women mentioned in *Ballard,* we reaffirm our holding that a trial court has the discretion to order alleged victims to submit to psychological examination under certain narrow circumstances. To clarify, we now revisit this issue.

The State first argues that compelling a sexual assault victim to submit to psychological examination may lead to greater embarrassment and humiliation than the victim has already suffered, directly in contravention of public policy. The State asserts that sex-

[15]410 P.2d 838 (Cal. 1966), *superseded by statute as stated in People v. Haskett,* 640 P.2d 776, 787 n.7 (Cal. 1982) (noting that a trial court may not order victims to submit to psychological examinations since the legislative enactment of Cal. Penal Code § 1112).

[16]*Jerousek,* 590 P.2d at 1371.

[17]*See Haskett,* 640 P.2d at 787 n.7; Cal. Penal Code § 1112 (adopted 1980) (West 2004) (proscribing a trial court from ordering any witness or victim in a sexual assault prosecution to submit to psychological examination for purposes of assessing credibility).

[18]*Ballard,* 410 P.2d at 846 (stating that the jury should not hear a sex offense charge until a qualified physician testifies as to his examination of the female victim's mental state and social history).

[19]*People v. Barnes,* 721 P.2d 110, 121 (Cal. 1986).

[20]*See Chapman v. State,* 117 Nev. 1, 16 P.3d 432 (2001); *Koerschner v. State,* 116 Nev. 1111, 13 P.3d 451 (2000) (abrogating *Marvelle v. State,* 114 Nev. 921, 966 P.2d 151 (1998), and *Griego v. State,* 111 Nev. 444, 893 P.2d 995 (1995), and overruling *Keeney v. State,* 109 Nev. 220, 850 P.2d 311 (1993)); *Lickey v. State,* 108 Nev. 191, 827 P.2d 824 (1992); *Colley v. State,* 98 Nev. 14, 639 P.2d 530 (1982).

ual assault victims encounter a number of hardships within the state criminal system,[21] including most significantly, confronting the attacker in court, testifying regarding personal details of the sexual assault in open court and possibly being subjected to aggressive, detailed and humiliating cross-examination by the defense.[22] The State emphasizes that the Nevada Legislature has also recognized that victims of sexual assault need protection and that the State has a compelling interest in encouraging victims of sexual assault to report crimes, to cooperate with the State's investigation and to testify at trial.[23] Additionally, the State notes that the Legislature's adoption of the rape shield law, NRS 50.090, indicates its concern for the privacy rights of sexual assault victims.[24] Finally, the State cautions that there are currently no guidelines to protect victims who are ordered to submit to psychological testing.[25]

The State also asserts that, in nonsexual assault cases, defendants do not have the ability to force an alleged victim or any other witness to submit to psychological testing. This discovery tactic has been limited to sexual assault victims. The State argues that, as in nonsexual assault cases, traditional methods of assessing a witness's credibility, such as cross-examination of the victim, presentation of defense expert witnesses regarding the victim's ability to relay the truth and appropriate jury instructions concerning credibility,[26] are adequate to allow the fact-finder to address the question

---

[21]*Turner v. State,* 111 Nev. 403, 404, 892 P.2d 579, 579 (1995) (recognizing that sexual assault victims experience a number of hardships, including: "(1) the initial emotional trauma of submitting to the official investigatory processes; (2) the fear of humiliation attendant to the publicity surrounding a sexual offense charge and embarrassment caused by demeaning defense tactics at trial; and (3) the vicious and discouraging process of 'blaming the victim,' whereby the police, the public, and the jury seek to determine whether a potential sexual offense charge was 'victim-precipitated'").

[22]*United States v. Dildy,* 39 F.R.D. 340, 343 (D.D.C. 1966).

[23]NRS 200.377(1)-(2).

[24]*See Johnson v. State,* 113 Nev. 772, 776, 942 P.2d 167, 170 (1997); *Lane v. District Court,* 104 Nev. 427, 444, 760 P.2d 1245, 1256 (1988).

[25]The State sets forth significant questions, including "whether the victim has a right to counsel during the examination, whether the victim can refuse to answer irrelevant questions about her personal life, [and] whether multiple defendants are entitled to have the victim examined by their own expert."

[26]*See Gilpin v. McCormick,* 921 F.2d 928, 932 (9th Cir. 1990) (holding that the trial court's refusal to order psychological examination of a sexual assault victim did not violate the defendant's right of confrontation because the Confrontation Clause requires only an opportunity for effective cross-examination). *See generally Maryland v. Craig,* 497 U.S. 836 (1990) (holding that the state's interest in the psychological well-being of sexual assault child victims may outweigh a defendant's right to face his accusers in court).

of the alleged sexual assault victim's truthfulness.[27] Finally, the State submits that ordering an alleged victim to submit to psychological testing for the purpose of determining credibility undermines the role of the jury.

Addressing the State's arguments concerning the role of the jury, an expert may testify that symptoms exhibited by the victim are consistent with those normally attributable to certain traumatic events.[28] This is true even though the opinion testimony embraces an ultimate issue in the case.[29] However, an expert's bolstering of a witness and an expert's direct opinion concerning the victim's credibility or veracity are both inadmissible.[30] Assessing the credibility of witnesses and weighing the evidence are functions of the jury.[31] Accordingly, to allow any expert, whether the State's or the defendant's, to testify as to an opinion of the truthfulness of a victim or witness, impermissibly invades the province of the jury.[32]

Furthermore, while we recognize that a fixed rule or a rule giving trial courts unbridled discretion may subject a victim to unnecessary harassment and embarrassment, we also recognize that a defendant has the right to preserve his constitutional right to a fair trial by countering the State's proffered evidence. In *Koerschner v. State*,[33] we reconciled prior Nevada case law concerning a trial court's discretionary power to order the psychological examination of a sexual assault victim. We concluded that the overriding judicial question is whether a compelling need exists for the trial court to order a psychological examination.[34] In determining whether a compelling need exists, *Koerschner* requires a trial court to consider three factors, not necessarily to be given equal weight: (1) whether the State calls or benefits from a psychological expert, (2) whether little or no corroboration of the offense exists beyond

---

[27]*See United States v. Riley,* 657 F.2d 1377, 1387 (8th Cir. 1981) (noting that the ability of the jury to observe and appraise the victim's credibility safeguards a defendant's rights).

[28]*See* NRS 50.345 ("In any prosecution for sexual assault, expert testimony is not inadmissible to show that the victim's behavior or mental or physical condition is consistent with the behavior or condition of a victim of sexual assault.").

[29]NRS 50.295.

[30]*Marvelle,* 114 Nev. at 931, 966 P.2d at 157.

[31]*McNair v. State,* 108 Nev. 53, 56, 825 P.2d 571, 573 (1992).

[32]*Lickey,* 108 Nev. at 196, 827 P.2d at 827.

[33]116 Nev. at 1116-17, 13 P.3d at 455 (abrogating *Marvelle,* 114 Nev. 921, 966 P.2d 151 and *Griego,* 111 Nev. 444, 893 P.2d 995, and overruling *Keeney,* 109 Nev. 220, 850 P.2d 311).

[34]*Id.*

the victim's testimony, and (3) "whether there is a reasonable basis for believing that the victim's mental or emotional state may have affected his or her veracity."[35]

We conclude, however, that the *Koerschner* test does not always adequately balance the needs of the victim and the defendant. We therefore modify our decision in *Koerschner*. We now hold that a defendant is entitled to a psychological examination of an alleged sexual assault victim only where: (1) the State notices the defendant that it intends to examine the victim by its own expert and (2) the defendant makes a prima facie showing of a compelling need for a psychological examination. In determining whether a compelling need exists, the trial court must consider: (1) whether little or no corroboration of the offense exists beyond the victim's testimony, and (2) whether there is a reasonable basis "for believing that the victim's mental or emotional state may have affected his or her veracity."[36] Moreover, in the exercise of discretion, we require that trial courts set forth a particularized factual finding that there is reason to believe that a psychological examination is warranted.

We further hold that a victim is not required to submit to a psychological examination. Where the victim refuses to submit to an examination, however, we hold that the State may not introduce expert evidence, either in a report or testimony that addresses or assesses the victim's character.[37] "An expert who has personally examined a victim is in a better position to render an opinion than is an expert who has not done so."[38] Therefore, when the victim refuses to submit to a psychological examination by a defendant's expert, both the State and the defendant would be restricted to the use of generalized testimony submitted by non-examining experts.[39]

---

[35]*Id.* at 1117, 13 P.3d at 455.

[36]*Id.*; *see* Greenberg, *supra* note 12, at 1265 ("[A] defendant has an interest in remaining free of warrantless accusations. This can occur when a victim mistakenly accuses the defendant of a sexual offense, especially where, for example, she suffers from a type of mental defect that renders her unable to distinguish fact from fantasy or when she is a liar." (footnotes omitted)). *But see State v. Tobias,* 769 P.2d 868, 869 (Wash. Ct. App. 1989) (stating that "psychiatric testimony would appear to be irrelevant where the complaining witness's credibility is called into question merely because corroboration of her story is lacking" because a credibility determination is within the jury's province).

[37]*People v. Wheeler,* 602 N.E.2d 826, 833 (Ill. 1992).

[38]*Id.* at 832.

[39]*See id.* at 833.

Given our recognition of the validity of *Washington* and its line of authority and applying *Koerschner,* as modified, to the instant case, we conclude that the district court manifestly abused its discretion when it ordered the psychological examination of the child victim. Because the State has not conducted a psychological examination of the child victim and does not intend to call an examining expert at trial, Romano may not request an independent psychological examination of the victim.

Furthermore, Romano has failed to demonstrate a compelling need for a psychological examination of the child. Romano's statements to Detective Roberts corroborate the child's testimony. The record reflects several inconsistencies in Romano's statements to Detective Roberts and several instances where Romano initially denied an event, then later stated that the event happened, but that it was innocent. Although Romano attempted to explain the innocence of his conduct, we conclude that Detective Roberts's testimony concerning his interview with Romano corroborated much of the child's testimony regarding the charges against her father.

Romano's argument that Detective Roberts was biased is also without merit. Romano argues that the inconsistencies in his statements were a result of a natural tendency ''to explain occurrences which, depending upon the bias of the individual considering said occurrences, could be viewed as nefarious in nature.'' Romano asserts that Detective Roberts's bias prevented him from seeing that television programming could have influenced the child to make her statements. Romano argues that it is obvious that sex is pervasive on television and that this could have motivated the child to testify as she did. Romano, however, has failed to demonstrate any causal relationship between the victim's statements and television programming. Moreover, Romano is unable to refute the evidence that Detective Roberts's testimony concerning his interview with Romano corroborates the victim's testimony.

The second consideration is whether Romano demonstrated a reasonable basis to believe that the victim's mental or emotional state may have affected her veracity. The State asserts that there is nothing in the record suggesting that the child is or was suffering from any kind of mental or emotional state that would affect her ability to be truthful. At the grand jury proceedings, the child did not appear to suffer from memory loss, was not inconsistent in her testimony and was not unsure of her answers.[40] Romano first argues

[40]*See Koerschner,* 116 Nev. at 1117, 13 P.3d at 456 (concluding that, ''while the child-victim . . . had experienced a very tragic and stressful childhood, there was no indication in the record that her veracity was affected to any particular degree by her mental or emotional state''); *cf. Marvelle,* 114 Nev. at 928, 966 P.2d at 155 (concluding victim's veracity was called into

that the child's mother coached her daughter because she wants custody of the child. Second, Romano argues that the mother's previous profession as a stripper inadvertently influenced the child's testimony. Romano contends that the child may have overheard her mother describing or performing certain acts on the mother's numerous boyfriends. He contends that, as a result of her mother's behavior, the child may be under the belief that certain sexual acts are appropriate between those who love each other and simply concocted the story to show her love of her father.

While Romano claims that the mother either coached the child or inadvertently influenced her, he also states that the child stayed with him during the week, and that the mother rarely visited. While Romano states that the mother has a motive to coach her daughter in an attempt to gain custody, the mother testified at the grand jury proceedings that she had no intention of seeking custody until she became aware of Romano's behavior. Romano has failed to demonstrate otherwise. We therefore conclude that these bare allegations do not call the child's veracity into question.

Finally, Romano asserts that the media's broadcast of masturbation and fellatio, acts with which he is also charged, influenced the child's testimony.[41] Romano states that media attention to these sexual acts is prevalent in both television broadcast and print media, including open discussions on talk shows during the afternoon when kids return home from school, and that young children are the recipients of sexually suggestive programming. Romano's theory that "the television did it" is unconvincing. We conclude that Romano's request for psychological examination of the child is a mere fishing expedition.[42] Accordingly, we conclude that the district court abused its discretion when it determined that a compelling need existed to grant Romano's motion for an independent psychological examination of the child victim.

## CONCLUSION

We conclude that the district court abused its discretion in ordering the child witness to submit to an independent psychological examination by the defendant's experts. Accordingly, we grant the State's petition for a writ of prohibition to prevent the district

question where she took four years to tell her story, statements accusing defendant were similar to her confessions to friends that someone else had molested her and there was testimony that the victim would often lie); *Griego,* 111 Nev. at 451, 893 P.2d at 1000 (concluding that the victim's veracity was called into question when he could not remember whether the testimony was his or someone else's).

[41]Romano makes this assertion in spite of his disclosure to Detective Roberts that the child had seen him masturbating several times.

[42]*State v. Welch,* 490 N.W.2d 216, 219 (Neb. 1992).

court from ordering the child victim to submit to a psychological examination. We direct the clerk of this court to issue a writ of prohibition directing the district court to vacate its order granting Romano's motion to compel the child victim to submit to a psychological examination.

SHEARING, C. J., BECKER and GIBBONS, JJ., concur.

MAUPIN, J., concurring:

I would grant the petition for writ of prohibition under our decision in *Koerschner v. State*.[1] In *Koerschner,* we limited a district court's discretion to order such evaluations to cases where the defendant presents a ''compelling need'' for the examination, weighing three factors that are not necessarily to be given equal consideration, to wit: whether the State calls or benefits from an expert in psychology or psychiatry, whether the evidence of the offense is supported by little or no corroboration beyond the testimony of the victim, and whether there is a reasonable basis for believing that the victim's mental or emotional state may have affected his or her veracity.[2] Thus, having previously rejected the anachronistic notion that an accuser's mental status is per se implicated in any sexual assault case, we severely restricted the scenarios in which a sexual assault victim may be subjected to a psychological examination.

We noted in the margin in *Koerschner* that ''[t]here may be situations where the veracity of a child witness may be brought into question because of his or her emotional or mental state, even though the State has had no access to or benefit from an expert.''[3] The majority now rejects that proposition and holds that such evaluations may never be ordered unless the State notices the defense that it intends to have the victim examined by its own expert. I believe that this new approach is too restrictive because a showing of compelling need is not always limited by whether the State has determined to utilize expert assistance. Going further, the State would have absolute control over whether an examination by the defendant could be obtained. The State's use or non-use of an expert should not constitute a threshold-determining factor in such matters. Accordingly, I would simply grant the State's petition without revisiting *Koerschner.*

ROSE, J., dissenting:

This opinion represents the final step in the elimination of a defendant's opportunity to have a psychological examination of the alleged victim in a child sexual assault case and the end of any ap-

[1]116 Nev. 1111, 13 P.3d 451 (2000).

[2]*Id.* at 1117, 13 P.3d at 455.

[3]*Id.* at 1117 n.4, 13 P.3d at 455 n.4.

pearance of fairness in such criminal proceedings. I dissent to this dramatic change in the criminal law and to the conclusion that the district court manifestly abused its discretion in permitting an examination of the alleged child victim in this case.

The determination of whether a witness is competent to testify is one of the critical threshold questions in the trial process. The very basic requirements are that a witness has the ability to observe and relate relevant facts on the witness stand and to understand the requirements of the witness oath.[1] Nowhere is this concern greater than with the testimony of children. The Nevada Legislature even requires that the district court determine whether a child is competent to testify before he or she is permitted to take the stand.[2]

This court has considered numerous cases involving whether a child was competent to testify.[3] We have instructed the district court that when evaluating a child's competency, the court should consider, among other factors, whether the child is unduly subject to adult suggestions and whether the child has been coached to testify a certain way.[4] We have also recognized that courts are often helped by expert testimony on such subjects as the child's susceptibility to coaching, the child's desire to please an adult, and the appropriateness of the child's examination conducted by law enforcement and health care providers.[5] Indeed, several scholars agree that experts can be effective in evaluating the reliability of a child's testimony since children can often be influenced to testify in a certain manner.[6]

In the past, this court has been very concerned that a level playing field exists when evaluating the reliability of a child's testimony.[7] In fact, it was this fairness concern that led to our decision

---

[1]*Felix v. State,* 109 Nev. 151, 173, 849 P.2d 220, 235 (1993).

[2]*See* NRS 47.060(1) (stating that the district court determines preliminary questions concerning the qualification of a person to be a witness).

[3]*Evans v. State,* 117 Nev. 609, 28 P.3d 498 (2001); *Koerschner v. State,* 116 Nev. 1111, 13 P.3d 451 (2000); *Felix,* 109 Nev. 151, 849 P.2d 220.

[4]*Evans,* 117 Nev. at 624, 28 P.3d at 509 (citing *Felix,* 109 Nev. at 173, 849 P.2d at 235).

[5]*Id.*

[6]*See* Alan J. Klein, *Forensic Issues in Sexual Abuse Allegations in Custody/Visitation Litigation,* 18 Law & Psychol. Rev. 247 (1994) (discussing the possibility that children may accept and report misleading information in a sexual abuse case as a result of "coaching"); Maggie Bruck & Stephen J. Ceci, *Special Theme: Suggestibility of Child Witnesses—The Social Science Amicus Brief in State of New Jersey v. Margaret Kelly Michaels,* 1 Psychol. Pub. Pol'y & L. 272 (June 1995) (examining the influence of misleading suggestion on a child's recall of an event).

[7]*See Marvelle v. State,* 114 Nev. 921, 927-28, 966 P.2d 151, 155 (1998); *Felix,* 109 Nev. at 173, 849 P.2d at 235; *Lickey v. State,* 108 Nev. 191, 195, 827 P.2d 824, 826 (1992).

in *Lickey v. State*,[8] which involved several problematic practices used by the State in a child sexual assault case, namely, the State was permitted to call a clinical psychologist specializing in child sexual abuse, while the defense was not. The State's psychologist reiterated on the stand what the child had told her in their interviews, concluded that the victim had been sexually molested, and opined that the child was telling the truth.[9] Prior to trial, Lickey had moved to have the child victim examined by a defense psychiatrist to refute the testimony of the State's psychologist, but his motion was denied.[10]

This court opined that general notions of fairness dictate that failure to provide equal access to expert psychiatric witnesses prejudices a criminal defendant and stated:

> The assistance a psychologist offers a defendant is very important in sexual assault cases. In *Warner*, we reversed a conviction for sexual assault because of ineffective counsel. We held that defense counsel was ineffective in part because he failed to interview the complaining minor or request a court order requiring her to undergo a physical or psychological examination. If failure to request a psychological examination constitutes grounds for a finding of ineffective counsel, it logically follows that a defendant facing charges of sexual assault of a minor should be afforded an expert psychiatric witness.
>
> . . . We conclude that unless competent evidence presents a compelling reason to protect the victim, it is error to deny a defendant the assistance of a defense psychologist or psychiatrist to examine the child-victim and testify at trial when the State is provided such assistance.[11]

Following *Lickey*, this court reviewed several cases involving the issue of the veracity of a child's testimony and the use of expert testimony in assessing it. In *Koerschner v. State*,[12] we felt it necessary to set forth guidelines to be used by the district court in deciding whether there is a compelling need to order a psychological examination of the alleged child victim. We held that the district court should consider three factors: (1) whether the State calls or benefits from a psychological expert, (2) whether little or no corroboration of the offense exists beyond the victim's testimony, and (3) whether there is a reasonable basis for believing that the vic-

---

[8]108 Nev. at 193-94, 827 P.2d at 825.

[9]*Id.* at 194, 827 P.2d at 825.

[10]*Id.* at 192-93, 827 P.2d at 824-25.

[11]*Id.* at 194-95, 827 P.2d at 826 (citation omitted).

[12]116 Nev. 1111, 13 P.3d 451 (2000).

tim's mental or emotional state may have affected his or her veracity.[13] This test incorporated our concern expressed in *Lickey* that both parties should ordinarily have equal access to expert witnesses, but changed the focus of the test to make the compelling need factor the overriding judicial question to be determined based on the aforementioned three-part test.[14] Even though we established a stricter standard to be met before a child victim could be ordered to submit to a psychological examination, we maintained an appropriate balance between the competing interests of protecting a child from unnecessary examinations and a defendant's right to a fair trial. No such observation can be made about the majority opinion in this case.

From all accounts, the test set forth in *Koerschner* for determining whether there is a compelling need to examine an alleged child victim has worked well. It is a strict test that on occasion will permit the State to have an expert psychologist testify when the defense does not. In spite of this test that apparently has served well the aim of justice in Nevada, the State now requests this court to prevent any further examination of child victims because there is no legislative or judicial authority to do so. This argument is made even though our Legislature has never addressed the specific issue, and this court has continually held that Nevada courts have authority to order the examination of child victims in appropriate cases. Our past decisions are a clear indication that we have believed that the courts of Nevada have the authority to order psychological examinations when necessary to provide a fair tribunal and to meet due process requirements. Thus, the only determination that we should make in reviewing the State's petition in this case is whether the district court abused its discretion in ordering a psychological examination of the child. This is why the majority opinion is so perplexing.

The majority unequivocally reaffirms that Nevada courts have the authority to order an alleged victim of sexual assault to submit to a psychological examination by the defendant's expert in certain narrow circumstances, but then makes it almost impossible for such an examination to take place. First, under the majority's modified *Koerschner* test, the defense must make a prima facie showing of a compelling need, and in assessing whether the defense has made a prima facie showing of a compelling need, the district court is evidently no longer to consider whether the State will benefit from the use of expert testimony. I see no reason for the narrowing of the *Koerschner* test since it provided proper guidance to the district court, while effectively balancing the needs of the victim and the defendant.

---

[13]*Id.* at 1117, 13 P.3d at 455.

[14]*Id.* at 1116-17, 13 P.3d at 455.

More alarming, however, is that after unequivocally declaring the right of Nevada courts to order psychological examinations of child victims and, by inference, indicating that such examinations are necessary and appropriate in some cases, the majority saves its "Sunday Punch" for last. It declares that a victim is not required to submit to a psychological examination under any circumstances, even when court ordered. In other words, the alleged victim can, and probably will, trump the need for a psychological examination in every case, even though the defendant has shown a compelling reason for an examination, and the district court has ordered that an examination be conducted. The remedial solution that is adopted by the majority when the victim refuses to submit to an examination is to prevent the State from introducing expert testimony. This may solve the fairness question in most cases, but certainly not in all cases. Instances where a child is under a psychological impediment to telling the truth or has been extensively coached are just two examples of cases where an examination of the alleged child victim would be appropriate, even if the State does not plan to use an expert witness at trial. Additionally, I can envision cases where the State will want to call a psychological expert, only to be precluded by the child victim refusing, through his or her parent or guardian, to submit to any examination. Thus, the majority has effectively eliminated the ability of a defendant to secure an examination of the child victim under almost any circumstances. But perhaps this is the unstated goal of the majority opinion.

In the past decade, there has been a steady removal of the safeguards given to defendants to test the reliability of a child victim's testimony. For example, this court has eliminated the need for strict compliance with the legislatively imposed duties of the district court to determine the admissibility of certain evidence in child sexual assault cases.[15] In addition, we have unnecessarily tightened the standard for obtaining an examination of a child victim, as I noted in *Koerschner*,[16] and the majority's decision today effectively eliminates that opportunity. At the same time, the

---

[15]*See Braunstein v. State,* 118 Nev. 68, 80-81, 40 P.3d 413, 422 (2002) (ROSE, J., concurring in part, dissenting in part) (observing that the majority "strips yet another procedural safeguard" from anyone accused of child sexual assault and "reverses a decade of precedent in the process" by concluding that the district court's failure to hold a trustworthiness hearing is not grounds for automatic reversal and was harmless error); *Koerschner,* 116 Nev. at 1120, 13 P.3d at 457 (ROSE, J., concurring) (disagreeing with the majority's decision to overrule long-standing precedent that "attempted to level the playing field when the State prosecutes a child sexual assault case with the aid of a psychological expert's testimony").

[16]*See Koerschner,* 116 Nev. at 1122, 13 P.3d at 458 (ROSE, J., concurring) (noting that the majority opinion changes the standard involved in obtaining a psychological examination in a child sexual assault case by requiring the defen-

Legislature has dramatically increased the penalties for child sexual assault[17] and child molestation.[18] With the penalties increasing to extreme levels, this court should at least maintain the existing safeguards in place to evaluate the reliability of a child victim's testimony. With the removal of these safeguards, there is a greater chance that a defendant will be wrongfully convicted, which is even more troubling given the increased consequences of such a

---

dant to prove that there is a compelling reason for an examination, rather than requiring the State to show that there is a compelling need to protect the alleged child victim).

[17]*See* NRS 200.366(3)(a)-(b) (providing that a person who commits a sexual assault against a child under the age of 16 years which results in substantial bodily harm to the child, shall be imprisoned in the state prison for life without the possibility of parole, and if the crime does not result in substantial bodily harm to the child, by imprisonment in the state prison (1) for life with the possibility of parole, with eligibility for parole beginning at 20 years; or (2) for a definite term of 40 years, with eligibility for parole at 15 years); NRS 200.366(3)(c) (providing that a person who commits sexual assault against a child under the age of 14 years which does not result in substantial bodily harm to the child, shall be imprisoned in the state prison for life with the possibility of parole, with eligibility for parole beginning at 20 years); NRS 200.366(4) (providing that a person who commits a sexual assault against a child under the age of 16 years and who has been previously convicted of a sexual assault or any other sexual offense against a child, shall be imprisoned in the state prison for life without the possibility of parole). To be subject to such a severe sentence, only slight penetration on the part of the defendant is required. *See Hutchins v. State,* 110 Nev. 103, 110, 867 P.2d 1136, 1140-41 (1994) (concluding that evidence that the defendant placed his tongue on, not in, the victim's vagina was sufficient to sustain a conviction for sexual assault because any intrusion, however slight, of any part of the victim's body, or any object manipulated or inserted by the defendant into the genital or anal openings of the victim's body is considered penetration). If a deadly weapon or any object that can cause harm is used to accomplish the crime, the sentence is doubled. NRS 193.165.

[18]*See* NRS 201.230(2)(a)-(b) (providing that a person who commits lewdness with a child under 14 years of age shall be imprisoned in the state prison (1) for life with the possibility of parole, with eligibility for parole at 10 years; or (2) a definite term of 20 years, with eligibility for parole at 2 years). To be subject to such a severe punishment, the defendant must willfully and lewdly commit a lewd act upon or with the body, or any part or member thereof, of a child under the age of 14 years, "with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of that child," but only the slightest degree of touching is required. *See* NRS 201.230(1); *see also U.S. v. Baron-Medina,* 187 F.3d 1144, 1147 (9th Cir. 1999) (observing that under California's lewdness statute, which is nearly identical to NRS 201.230, even an innocuous touching, if performed with lewd intent, violates the statute); *Summers v. Sheriff,* 90 Nev. 180, 182, 521 P.2d 1228, 1229 (1974) (observing that a California appellate court affirmed a conviction where the defendant placed his hand between the child victim's legs without placing it under her clothing). If a deadly weapon or an object that can cause harm is used to accomplish the crime, the sentence is doubled. NRS 193.165.

conviction. Nonetheless, this court appears to be entirely concerned about the welfare of the child victim, while remaining unconcerned about the fairness of the process for the accused.

Finally, I also dissent to the conclusion that the district court abused its discretion when it ordered a psychological examination of the alleged victim in this case. The six-year-old child lived with her natural father because her natural mother was a stripper and lived in a bad neighborhood. The accused natural father claimed that his daughter has an unusually precocious knowledge of sexual matters because she has watched pornography at her mother's house. He also claimed that he and his former wife were in a custody battle and that she had coached their child about what to say against him. The district court was presented with little corroborating evidence of the sexual assault and apparently believed there was a serious question as to the child's veracity. The majority opinion correctly notes that we will not disturb a discretionary act unless that discretion is manifestly abused or exercised arbitrarily or capriciously. While this is a close case, I do not think the district court manifestly abused its discretion.

For these reasons, I dissent.